IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:14-CV-10

| | |
|---|---|
| PATRICIA LEDFORD, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| CAROLYN W. COLVIN, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**BEFORE THE COURT** are cross-motions for summary judgment filed by Plaintiff Patricia Ledford (Doc. 9)[1] and Defendant Carolyn W. Colvin (Doc. 12). Plaintiff has filed a response to Defendant's motion. (Doc. 14).

## I. BACKGROUND OF THE LAW

The Social Security Administration ("SSA") has established a five-step sequential evaluation process for determining whether an individual is disabled.[2] 20 C.F.R. §§ 404.1520(a) and 416.920(a). If it is determined that a claimant is or is not disabled at one step, the SSA or Administrative Law Judge will issue a decision without proceeding to the next step in the evaluation. A claimant's residual functional capacity ("RFC") is determined after step three has

---

[1] Although titled "Motion for Judgment on the Pleadings" the Court construes Plaintiff's filing as one for summary judgment in accordance with the Social Security Briefing Order dated December 16, 2013.

[2] 20 C.F.R. §§ 404.1520 and 416.920 articulate the five-step evaluation process: (1) if the claimant is performing substantial gainful activity, the SSA will automatically find that claimant is not disabled at the first step; (2) if the claimant does not have a medically determinable physical or mental impairment, or combination of impairments, that is severe and meets the duration requirement, the SSA will automatically find that claimant is not disabled at the second step; (3) if the severity and nature of claimant's impairment equals one of those listed in 20 CFR 404, Subpart P, App. 1, the SSA will automatically find that claimant is disabled at the third step, or the evaluation will proceed to assess claimant's residual functional capacity; (4) considering claimant's residual functional capacity, if claimant can perform past relevant work, the SSA will automatically find that claimant is not disabled at the fourth step; (5) considering claimant's residual functional capacity, age, education and work experience, if claimant can adjust to perform other work, the SSA will find that claimant is not disabled at the fifth step, or, if claimant cannot adjust to perform other work, the SSA must find that claimant is disabled.

been completed, but before step four is begun, in order to determine what level of physical and mental exertion the claimant can perform at work. 20 C.F.R. § 404.1545(a) and § 416.945(a). The ALJ determines the RFC by assessing a claimant's ability to do physical and mental activities on a sustained basis, despite limitations from identified impairments and claimed symptoms that are reasonably consistent with objective medical evidence and supported by other evidence. 20 C.F.R. §§ 404.1529, 404.1545, 416.929, and 416.945.

## II.     ADMINISTRATIVE HISTORY

Plaintiff filed a Title II application for period of disability and disability insurance benefits ("DIB") on April 6, 2011. The claim was denied initially and upon reconsideration. On September 5, 2012, Plaintiff was granted a hearing before Administrative Law Judge Kevin F. Foley ("ALJ"). Plaintiff was represented by an attorney at the hearing. (Tr. 32-83). On September 28, 2012, the ALJ issued an unfavorable decision, indicating that claimant's date last insured ("DLI") was December 31, 2011 and that he had no medical records prior to June 2010. (Tr. 15, 21). Thereafter, Plaintiff's counsel appealed the unfavorable decision to the Appeals Council, including additional medical evidence. (Tr. 7-8; 455-678). The Appeals Council considered the additional evidence and found that it did not provide a basis for changing the ALJ's decision. Accordingly, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-6).

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of October 9, 2007 thorough her DLI. (Tr. 17). At step two, the ALJ found that Plaintiff had the following severe impairments: bilateral carpal tunnel syndrome, epicondylitis, probable right more than left thoracic compromise, chronic low

back pain with some lower extremity symptoms, anxiety, and adjustment disorder. (Tr. 17-19). At step three, the ALJ found that Plaintiff did not meet the listings. (Tr. 19).

The ALJ then assessed Plaintiff with the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b). However, he limited her to unskilled jobs where she could sit occasionally. (Tr. 20). Further, he required that "[u]se of the hands and arms would be limited to frequent as opposed to constant handling and fingering bilaterally." (Tr. 20). He also found that she "should not perform foot controls with the right lower extremity." (Tr. 20). The ALJ recounted that the Plaintiff alleged that she was not able to return to work since October 2007 because she was injured lifting a box and she had to have surgery. (Tr. 20). At the hearing, Plaintiff stated that her pain level was better after the surgery but that she still had pain in her right leg. (Tr. 21). The ALJ recounted that Plaintiff testified that she had difficulty doing household chores. (Tr. 21). Plaintiff stated that she does not do much outside of the home, except go grocery shopping. (Tr. 21). She further stated that was divorced and does not date. (Tr. 21). The ALJ stated that the record showed Plaintiff was capable of performing light work as limited above.

He referenced the fact that a neurologist evaluated Plaintiff in February 2011. The neurologist recounted Plaintiff's history of lumbosacral disc disease and complaints of right leg pain and numbness, but could not find anything that would point to a new lumbar disc disease or radiculopathy. (Tr. 21). The neurologist could not find anything objective regarding Plaintiff's allegations of pain and numbness despite performing testing. (Tr. 22). Further, an MRI was taken of Plaintiff's lumbar spine in April 2011. It showed her prior posterior fusion at the L4-5 level, but could not otherwise explain Plaintiff's alleged symptoms. (Tr. 22). Dr. Wheeler found that her coordination and gait were normal without antalgia. (Tr. 22). In October 2010, Dr.

3

Klein evaluated Plaintiff. EMG nerve conduction studies were normal and did not suggest nerve root compression. (Tr. 22).

The ALJ also found Plaintiff not credible because her allegations regarding her function after her 2007 back surgery were not consistent. She told the neurologist that she could walk without pain after the surgery and that her symptoms improved. (Tr. 22). She told Dr. Wheeler in August 2011 that it was only "over the past year" that she had developed recurrence of lower right sided back pain, which she characterized and he diagnosed as activity related. (Tr. 22).

The ALJ found that claimant's symptoms of carpal tunnel, epicondylitis, and probable thoracic outlet compromise were minor and have improved with treatment. Dr. Michael Roberts performed bilateral carpal tunnel release surgeries on her and at a follow-up on May 8, 2012, he observed bilateral circulation and intact motor and sensory function. (Tr. 22). Her physical therapy notes from October 2011 to June 2012 only document back pain, not arm pain. (Tr. 22). Further, the ALJ's minor finding was buttressed by the fact that Plaintiff mowed the law in October 2011 with a push lawnmower without reporting any pain in her arms. (Tr. 22). However, the ALJ still issued the limitation due to sensation problems. (Tr. 22).

The ALJ also found that Plaintiff's allegations regarding her overall pain level were not credible. He cited two post-DLI notes. One indicated that Plaintiff "finds adequate pain relief with fentayl patch." The other stated that "[p]atient manifests no significant pain behavior that would suggest her verbal report of 7/10." (Tr. 22).

The ALJ noted that Plaintiff failed to follow a prescribed course of remedial treatment. (Tr. 22).

The ALJ then found Plaintiff's credibility altogether not convincing and stated that "the record suggests [Plaintiff] stopped working in 2007 to raise her family and not because of her

4

physical limitations." (Tr. 23). The ALJ noted that the birth date of claimant's youngest son corresponds closely to claimant's alleged onset date. (Tr. 23). The ALJ found that while Plaintiff alleged that she engaged in an inactive lifestyle, the record shows otherwise. (Tr. 23). For instance, she told Dr. Wheeler that she remained active in performing yard work, household activities, and raising a family after her 2007 surgery. (Tr. 23). Further, she told Dr. Rees that she exercised 3 to 4 times a week. (Tr. 23). Her pain was the same before and after using a push lawn mower and in February 2012 she went skating with her son. (Tr. 23).

The ALJ then found that the record offered little evidence to support her alleged mental impairments. (Tr. 23).

The ALJ then assigned "little weight" to Dr. Dickson, who was one of Plaintiff's treating physicians. (Tr. 24). She stated that Dr. Dickson made conclusory statements without offering an assessment of the Plaintiff's specific physical and mental limitations. Further, Dr. Dickson seemed uncritically to accept most of Plaintiff's subjective complaints as true and relied on them heavily in making his opinions. (Tr. 24).

At step four, the ALJ found that Plaintiff could not perform past relevant work. (Tr. 25). At step five, the ALJ, with the assistance of a vocational expert, found that there were jobs that existed in the national economy that Plaintiff could have performed through her DLI. (Tr. 25).

### III. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the

evidence or to substitute its judgment for that of the Commissioner—so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456 (4th Cir.1990); *see also*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Hancock v. Astrue*, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Perales*, 402 U.S. at 401). Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## IV.    ANALYSIS

The Court notes that Plaintiff's current attorney is not the attorney that represented her in the administrative process. The ALJ issued an opinion denying benefits and noted that:

> The claimant alleges a disability onset date of October 9, 2007, yet there are no medical records prior to June 2010. This is despite the fact that the claimant is represented by an experienced attorney who knows to submit all relevant medical evidence. This case is title II only, and the claimant's date last insured is December 31, 2011. Accordingly, there is essentially only 19 months of evidence for me to evaluate.

(Tr. 21). On appeal, Plaintiff's current attorney represents that the records were submitted before the hearing, but were not exhibited by the Social Security Administration. (Doc. 10, at 4). Plaintiff's administrative attorney filed an appeal regarding the unfavorable decision that stated that he "sent in medical records into the Social Security file that dated as far back as February 8, 2006." (Tr. 219). He complained of being "unable to access the computer to verify that the records were in the file" prior to the hearing. (*Id.*). He also stated that "[d]uring the hearing, [his] computer 'locked up' and he was unable to access the computer file." (*Id.*). He further states that the ALJ never informed him during the hearing that there were no records in the file prior to July 2010. (*Id.*). Plaintiff does not contend that the ALJ was required to tell her attorney about the files. Further, the Court notes that the transcript shows that the administrative attorney did have access to the files. First, he indicated that he had direct access to the Plaintiff's files when the ALJ asked him. (Tr. 35). Second, he handed up a new file that did not make it into the record. (Tr. 34). This means that the attorney was aware of the contents of the record in time to supplement it. Therefore, the Court declines to reverse on Plaintiff's contention that she was denied "due process" by this purported error. (Doc. 14, at 3). Further, Plaintiff's rights were also protected by her right to appeal to this Court after she was denied review by the Appeals Council.

This is a case where new evidence has been specifically incorporated into the record by the Appeals Council. Accordingly, this new evidence is part of the record on appeal. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011). The Court notes that the Appeals Council did not explain the basis for its decision; however, it is not required to do so. *Id.* at 702. Certainly "an express analysis of the Appeal's Council's determination would [be] helpful for purposes of judicial review." *Id.* at 706 (quoting *Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir.

7

2007)). However, judicial review is still possible "as long as the record provides 'an adequate explanation of [the Commissioner's] decision.'" *Id.* (quoting *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983)). When a court "cannot determine, from review of the record as a whole, if substantial evidence supports the denial of benefits" it must reverse and remand. *Id.* at 702.

In *Meyer*, the ALJ denied the disability claim and stated that the claimant had failed to provide an opinion from his treating physician. *Id.* at 703. The claimant then submitted a letter from his treating physician to the Appeals Council. *Id.* at 703-04. However, the Appeals Council did not change the ALJ's decision. *Id.* The Fourth Circuit held that remand was appropriate because the ALJ's decision suggested that an "evidentiary gap played a role in its decision." *Id.* The Fourth Circuit stated that the record was not "one-sided" and that evidence submitted needed to be reconciled by the ALJ because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder." *Id.*

Here, the ALJ suggested that an evidentiary gap played a role in his decision. (Tr. 21) ("The claimant alleges a disability onset date of October 9, 2007, yet there are no medical records prior to June 2010 . . . . Accordingly, there is essentially only 19 months of evidence for me to evaluate."). The ALJ also suggested that the record shows that Ledford stopped working in 2007 to raise her family. (Tr. 23). Elsewhere in his opinion, the ALJ found other evidence to question claimant's credibility. The ALJ also discounted the opinion of Dr. Dickson, in part, because all of his opinions post-dated her date last insured. (Tr. 24).

In particular, Plaintiff argues that that the submitted evidence shows that she has had three surgeries: a lumbar laminectomy, release of nerve root compression in her right arm, and exploratory surgery for radial nerve palsy. The ALJ was aware of Ms. Ledford's surgeries

8

through her testimony at the hearing. Further, other medical providers noted these surgeries in their records. However, the contents of the records need to be considered below, not because they prove the fact that Ledford underwent surgery, but because they weigh on her credibility in regard to her allegations of pain.[3] These records, particularly the records reflecting her somewhat frequent medical provider visits in 2007, also conflict with the ALJ's suggestion that Ledford may have quit work to raise her family. Accordingly, as provided in *Meyer*, it is appropriate for the ALJ to reconcile the inconsistencies in the evidence and to re-determine his credibility findings. The adverse credibility finding and the suggestion that an evidentiary gap played a role in the decision compel this Court to **REMAND**.

**IT IS, THEREFORE, ORDERED THAT**

(1) Ledford's Motion for Summary Judgment is **DENIED**;

(2) The Commissioner's Motion for Summary Judgment is **DENIED**; and

(3) This case is remanded to the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Signed: March 25, 2015

Richard L. Voorhees
United States District Judge

---

[3] The Court does not mean to imply that every time a claimant submits new medical evidence he or she is entitled to a reversal and a new hearing. Rather, in this case the claimant submitted almost three years of medical evidence before her last date insured that may corroborate her allegations of pain and can be construed to conflict with the ALJ's finding that she quit work to raise her family.